IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

SCOTT SCHOONOVER,                        )
                                         )
                        Plaintiff,       )
                                         )
            v.                           )            Case No.07-3312-WEB
                                         )
STATE OF KANSAS,                         )
                                         )
                        Defendant.       )
_____ )

ORDER

This matter is before the court on the Petitioner's Motion for a Writ of Habeas Corpus,

pursuant to 28 U.S.C. § 2254, which seeks to have his state conviction overturned.  The

petitioner argues his state conviction is unconstitutional because his conviction of manufacture

of methamphetamine and possession of methamphetamine is multiplicitous; evidence should

have been suppressed due to an insufficient affidavit for search warrant, and the evidence was

insufficient to support his  conviction of possession of methamphetamine without a tax stamp.

I.  Jurisdiction

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 2254 and 28

U.S.C. § 1331.

II.  Facts

1.  On may 11, 2001, at 8:30 p.m., Schoonover was found passed out in the driver's seat

of a 1982 Ford Escort.  The vehicle was in the road in rural McPherson County.

2.  The farmer who found the vehicle walked up near the driver's side door and tried to

get Schoonover's  attention by yelling at him.  He did not get any closer than five feet from the

door.  Schoonover did not respond.

1

3.  The farmer called EMS from his cell phone.

4.  Vicki Johnson from the Inman Fire Department responded to the scene.  She observed Schoonover leaning back in the seat with his eyes closed.  The engine of the car was still running.        5.  Johnson turned off the car, but was unable to wake Schoonover.  She observed a beer bottle between his legs.

6.  Richard Langdon, an Inman police officer, arrived at the scene.  He observed a cooler on the front floorboard, coffee filters in the front seat, and a Bud Ice beer bottle sitting between Schoonover's legs.

7.  Langdon removed the beer bottle and shouted at Schoonover.  Schoonover awoke, and was asked to exit the vehicle.  When Langdon opened the door of the vehicle he smelled a mild odor of ammonia.  Schoonover was placed under arrest for transporting an open container.

8.  After exiting the vehicle, Schoonover stated that he was cold and asked for his shirt. Langdon reached in through the open passenger window to retrieve the shirt from the passenger seat and again smelled what he believed to be anhydrous ammonia coming from the cooler on floorboard.

9.  Langdon again smelled anhydrous ammonia when he opened the passenger door to look for Schoonover's identification.  The smell took his breath away and burned his eyes.

10.  Captain Hoffman of the McPherson Sheriff's Department arrived.  He smelled anhydrous ammonia when he approached the car.  It was a very strong odor on the passenger side of the car.

11.  Detective Frazier of the McPherson Sheriff's Department arrived.  He smelled the anhydrous ammonia smell coming from the vehicle.  He also saw the coffee filters and the

2

Coleman fuel inside the car.  Frazier applied for and obtained a search warrant.

12.   The search of the vehicle resulted in the following discovery: The cooler contained a bag of ice, a canning jar with a light blue liquid and a white substance one inch deep in the bottom of the jar, a three-quart insulated cooler with anhydrous ammonia located inside, and three bottles of Bud Ice beer.  A backpack in the back seat contained a bag of rock salt, a one-quart bottle of muriatic acid, a quart canning jar with coffee filters inside, three empty canning jars and lids, and plastic spatulas and spoons.  A pair of brown boots was found, and each boot contained a pint bottle of gas line antifreeze.  Two cans of Coleman Fuel were found in the rear cargo area of the vehicle.  A duffle bag located on the back seat contained six lithium batteries, a twin beam scale, a glass Pyrex square bowl, a metal kitchen strainer, folding knives, a Zip-Loc bag with vegetation and seeds inside, two mixing spoons, two pairs of pliers, a pair of forceps, Zip-Loc bags, single-edge razor blades, a razor blade scraper, a box of coffee filters, a coffee mill with a white powder inside, a drinking cup containing plastic bags and two white tablets, and a plastic bag containing red powder and a "rocky substance."  Also inside the vehicle were rolling papers, a plastic bag containing a "green leafy substance," a lithium battery, a box of coffee filters, and a brown pill bottle containing a white powder.

13.   Testing revealed the following: The brown pill bottle contained 27 grams of ephedrine or pseudoephedrine, the "green leafy substance" was found to be marijuana, and the canning jar with the blue liquid and white substance was found to contain methamphetamine. The net weight of the methamphetamine was approximately 26 grams.


III.  <u>History</u>

3

Schoonover was charged in district court as follows: possession of ephedrine or pseudoephedrine to manufacture methamphetamine, possession of anhydrous ammonia in an unapproved container, possession of drug paraphernalia with the intent to manufacture emthamphetamine, possession of marijuana, possession of methamphetamine with two prior convictions, possession of methamphetamine without a tax stamp, and manufacture of methamphetamine.  The defendant, pro se and through his attorney, filed a number of motions to dismiss, motions to suppress evidence, and motions in limine.  The case proceeded to a jury trial where in the defendant was found guilty of all charges.  He was sentenced to 158 months imprisonment, with 36 months post release supervision.

The defendant filed a direct appeal.  On appeal, the defendant raised a number of arguments:  the crimes of manufacture of methamphetamine and possession of methamphetamine are multiplicitous; the crimes of manufacturing methamphetamine and possession of anhydrous ammonia in an unapproved container are multiplicitous; the crimes of manufacturing methamphetamine and possession of ephedrine or pseudoephedrine as a precursor are multiplicitous; the crimes of manufacturing methamphetamine and possession of drug paraphernalia with the intent to manufacture are multiplicitous; the crimes of possession of ephedrine or pseudoephedrine as a precursor, possession of anhydrous ammonia in an unapproved container, and possession of manufacturing drug paraphernalia are multiplicitous; the district court erred when it failed to instruct the jury on possession of manufacturing drug paraphernalia and possession of methamphetamine as lesser included offenses of manufacturing methamphetamine; the court should have given an unanimity instruction; there was insufficient evidence that he had an opportunity to affix tax stamps to the methamphetamine he possessed;

4

the district court erred in failing to sustain his motion to suppress evidence as the search warrant contained material omissions, the search warrant was not issued by a "neutral and detached magistrate", and the police officers exceeded the scope of the search warrant; the defendant argued that cumulative trial errors deprived him of a fair trial, and finally the severity level of manufacturing methamphetamine conviction was ranked incorrectly.  The Court of Appeals affirmed the defendants conviction, and reversed the case for resentencing pursuant to <u>State v. McAdam</u>, 277 Kan. 136, 83 P.3d 161 (2004).  <u>State v. Schoonover</u>, 99 P.3d 1152 (2004).  The defendant petitioned the Kansas Supreme Court for review, which was granted.  The Supreme Court affirmed the conviction of the defendant.  <u>State v. Schoonover</u>, 281 Kan. 453, 133 P.3d 48 (2006).

A review of the Kansas Appellate Courts case inquiry system shows the defendant has filed an appeal of his sentence, after he was resentenced pursuant to the order of the Kansas Court of Appeals.  The appeal was transferred to the Supreme Court, and that appeal is pending.

IV.  <u>Exhaustion</u>

Prior to ruling on the merits of Petitioner's claims, the Court must first determine if the claims  have been exhausted at the state court level.  "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack."  <u>Dever v. Kansas State Penitentiary</u>, 36 F.3d 1531, 1534 (10th Cir. 1994); 28 U.S.C.  § 2254.

"[T]he Supreme Court has held that if a petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the claims are

considered exhausted and procedurally defaulted for purposes of federal habeas relief."  Thomas v. Gibson, 218 F.3d 1213, 1221 (10th Cir. 2000); Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  Federal courts do not review issues that are defaulted in state court on an independent basis, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice.  Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998).

The exhaustion requirement is satisfied when a federal claim has been "fairly presented to the state courts" to the extent the state court had "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971).  Fair presentation does not require the petitioner to "cite book and verse on the federal constitution," only that the petitioner has raised the substance of the federal claim in state court.  Bland v. Sirmons, 459 F.3d 999, 1011 (10th Cir. 2006).

The petitioner argued to the Court of Appeals and the Supreme Court that the charges of manufacture of methamphetamine and possession of methamphetamine are multiplicitous.  He also raised issues regarding the search warrant. He argued the district court erred in failing to sustain his motion to suppress evidence as the affidavit in support of the search warrant contained material omissions.  Schoonover claimed the affidavit was deficient because it did not mention the fact that some camping and fishing gear was also visible inside the car.  Further, Schoonover argued the affidavit was deficient because the civilian witnesses did not smell anhydrous ammonia.  The petitioner now raises the argument that the  search warrant should have been suppressed due to an insufficient affidavit.  This argument is based on the fact that the car was moved from the location listed in the affidavit before the search warrant was executed.

The Petitioner argued on direct appeal that there was insufficient evidence that he had an opportunity to affix a tax stamp to the methamphetamine he possessed.  In his motion for habeas relief, he argues the methamphetamine was not usable and the manufacturing process was not complete.  Therefore, a tax stamp could not be affixed to the product.

Although the second and third issues raised by the petitioner are not raised in the exact same form as they were raised in to the state court, the claims are substantially equivalent to the claims presented.  The substance of the claims are the same.  The petitioner is arguing the affidavit is insufficient and the tax stamp was not required.  The court finds the claims presented by the petitioner are therefore exhausted.

Petitioner has an appeal pending with the Kansas Court of Appeals.  At issue is the sentence the petitioner received after he was re-sentenced pursuant to the order of the Kansas Court of Appeals.  In the habeas motion, the petition presents only claims that have been exhausted in the state court.  The challenge to the sentence in the state court is a separate claim, and distinct from the petitioner's federal claims.  The claims regarding sentencing issues that are pending in the state court have not been raised in the habeas petition.

V.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern this action.  Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003).  The "AEDPA circumscribes a federal habeas court's review of a state-court decision."  Lockyer v. Andrade, 538 U.S. 63, 70, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).  When the state court has adjudicated a claim on the merits, the Court may not grant a writ of habeas corpus unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established Federal law means, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer at 71-72. Determining what the Supreme Court has clearly established is usually "straightforward." Id. First, a state court's decision is contrary to such law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed.2d 914, 926 (2002). Second, the state court's application of clearly established Federal law is unreasonable "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." Id. The application must be unreasonable, not just incorrect. Id. "Avoiding these pitfalls does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state court decision contradicts them." Patton v. Mullin, 425 F.3d 788, 794 (10th Cir. 2005), citing Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L. Ed. 2d 263 (2002). In addition, we presume the state court's factual determinations are correct and  the prisoner bears the burden to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court does not stand to correct errors of state law and is bound by a state court's interpretation of its own law. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

VI.  Discussion

a.  Multiplicitous

The petitioner argues his conviction for possession of methamphetamine and manufacture of methamphetamine are multiplicitous.  The Kansas Supreme Court addressed this issue in 21 pages of the 52 page opinion.  The Court examined the Federal test which is applied when the court is presented with an issue of multiple punishments for the same conduct.  The Court reviewed the Blockburger, or the elements test.  See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).  The Court focused on the legislative intent of the statue to determine whether the legislature has explicitly authorized multiple punishment.  The Court then examined Kansas cases.  It found that Kansas has followed the United States Supreme Court's analysis.  Kansas applies the same elements test to multiplicity issues.  State v. Patten, 280 Kan. 385, 122 P.3d 350 (2005).  The Court then examined Schoonover's convictions for manufacture methamphetamine and possession of methamphetamine.  The Court determined the elements of the two offenses requires proof of separate things.  The Court found no double jeopardy violation.

The elements of the two crimes shows there are different elements that must be shown to prove each crime.  Manufacture of methamphetamine requires proof of manufacturing or the ability to manufacture.  To show the defendant manufactured methamphetamine, the State must show the defendant (1) intentionally (2) completed the manufacture of methamphetamine or (3) could have successfully manufactured methamphetamine.  State v. Martens, 274 Kan. 459, 466, 42 P.3d 142 (2002); K.S.A. 65-4159.  To show the defendant possessed methamphetamine the State must show the defendant (1) intentionally (2) possessed or had under his control

9

methamphetamine.  K.S.A. 65-4160.

The evidence shows Schoonover possessed coffee filters, anhydrous ammonia, Coleman fuel, canning jars, rock salt, muriatic acid, gas line antifreeze, lithium batteries, strainer,  and ephedrine or pseudoephedrine.  Schoonover possessed all the necessary materials to manufacture methamphetamine.  The white substance in the canning jar was tested and found to contain 26 grams of methamphetamine.  The evidence is clear the defendant either completed the manufacture process, or could have successfully manufactured methamphetamine.

The State must show the defendant intentionally possessed methamphetamine.  Law enforcement found a white substance in a canning jar in the vehicle.  The substance was found in a cooler, which also contained the same brand of beer that was found between the defendant's legs.  The substance was tested and found to contain 26 grams of methamphetamine.  The evidence is clear the defendant possessed methamphetamine.

The State does not have to prove the defendant possessed methamphetamine to find the defendant manufactured methamphetamine.  Likewise, the State does not have to prove the defendant manufactured methamphetamine to prove he possessed methamphetamine.  The elements to prove the two separate crimes required proof of separate things.

The petitioner has not shown the Kansas Supreme Court's decision was an unreasonable application of federal law.  The Court examined the standard at the federal level, determined the state standard followed the federal standard, and applied the state test.  The petitioner's first claim for relief is denied.


b.  Affidavit

10

The petitioner argues that evidence should have been suppressed due to an insufficient affidavit for a search warrant. After a hearing, the trial court denied his motion to suppress. This issue was not directly raised to the Kansas Court of Appeals or the Kansas Supreme Court, but the petitioner raised other issues relating to the affidavit and the search warrant. On direct appeal, the petitioner argued the district court erred in failing to sustain his motion to suppress evidence because the affidavit in support of the search warrant contained material omissions, the search warrant was not issued by a neutral and detached magistrate, and the police officers exceeded the scope of the search warrant. This issue was presented to the Kansas Supreme Court on petition for review. The Court of Appeals applied Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and ruled the affidavit did not contain any material omissions and presented more than sufficient evidence to believe that contraband was located inside the vehicle. The Court then ruled that the police would have been justified in searching the vehicle without a search warrant. The Court found the officers had probable cause to search after smelling the anhydrous ammonia. The officers were also justified to search the vehicle as a search incident to a lawful arrest. The Kansas Supreme Court agreed with the assessment of the Kansas Court of Appeals.

The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort. United States v. Lora-Solano, 330 F.3d 1288, 1293 (10th Cir. 2003). A review of the affidavit shows it describes the petitioner's car, the location of the vehicle when it was discovered, the law enforcement personnel that responded to the scene, the smell of anhydrous ammonia coming from the vehicle, the coffee filters sitting in the vehicle, the

11

Coleman fuel can in the rear area of the car, the defendant's previous arrest history for possession of methamphetamine with the intent to distribute, and for manufacturing a controlled substance.  Petitioner's car was described by the year, make, color, and tag.

"In reviewing whether probable cause existed for issuing a search warrant, the test is whether the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched."  United States v. Tisdale, 248 F.3d 964, 971-72 (10th Cir. 2001).  The review of a search warrant and the affidavit should be based on the "totality of the circumstances presented in the affidavit."  United States v. Tuter, 240 F.3d 1292, 1300 (10th Cir. 2001).  Although the vehicle had been moved from the street address in the affidavit, the description of the vehicle was particular enough that any officer executing the warrant would be able to identify the vehicle.  The information presented in the affidavit was sufficient to believe that evidence of manufacturing methamphetamine would be located in the vehicle.  The district court's denial of the petitioner's motion to suppress was not an unreasonable application of federal law.

The Kansas Court of Appeals and the Kansas Supreme Court ruled that the police would have been justified in searching the vehicle even if they had not requested a search warrant.  The smell of anhydrous ammonia provided probable cause for the vehicle search.  In California v. Acevedo, 500 U.S. 565, 114 L.Ed.2d 619, 111 S.Ct. 1982 (1991), the Court ruled police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained in the car.  Also, both courts ruled the search of the vehicle was justified as a search incident to a lawful arrest.  The United States Supreme Court held that a lawful arrest creates a situation which justifies the contemporaneous search without a warrant of

the person arrested and the surrounding area.  Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).  The Kansas courts correctly and reasonably applied federal law.

c.  Tax Stamp

The petitioner argues the methamphetamine was not in a usable form as the manufacturing process was not complete, therefore he could not be convicted of possession of methamphetamine without a tax stamp.  The Kansas Court of Appeals found that Schoonover was passed out in his vehicle, with a beer between his legs.  The same brand of beer was in the cooler which contained the methamphetamine.  The Court found overwhelming evidence the necessary stamps were not affixed to the methamphetamine.  The Court also found that the KBI chemist testified the net weight of the methamphetamine was 26.46 grams.

The petitioner has not presented evidence that the decision of the Kansas Courts resulted in an unreasonable determination of the facts.  The methamphetamine was in a cooler in his car, and the KBI was able to determine a net weight of the controlled substance.  There was not a tax stamp affixed to the substance.  Furthermore, the defendant has not shown the methamphetamine was not in a usable form, as the KBI was able to test the substance and determine the weight. The petitioner's argument is without merit.

VII.  Conclusion

IT IS THEREFORE ORDERED that the petition for relief under 28 U.S.C. § 2254 (Doc. 1) is DENIED;

IT IS FURTHER ORDERED that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

SO ORDERED this 23rd day of September, 2008.

 s/ Wesley E. Brown
Wesley E. Brown, Senior U.S. District Judge